IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 1, 2024

## IN RE AZAY C. ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-2085-21      Jerry Stokes, Judge**

_____

**No. W2022-01156-COA-R3-JV**
_____

In this case, Mother appeals the trial court's severe abuse finding, after one of her children was killed in a car accident while she was driving. The trial court found that Mother failed to protect her children when she failed to ensure that the children were properly restrained in the automobile. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and JEFFREY USMAN, JJ., joined.

Psonya C. Hackett, Memphis, Tennessee, for the appellant, Racqual C.

Jonathan Skrmetti, Attorney General and Reporter; Mara L. Cunningham, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

### OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

On June 13, 2018, Petitioner/Appellee the Tennessee Department of Children's Services ("DCS") filed a petition in the Shelby County Juvenile Court ("the juvenile court") to adjudicate the two living children of Respondent/Appellant Racqual C.[1] ("Mother"), dependent and neglected and the victims of severe child abuse. The petition alleged that at approximately 5:00 a.m. on May 20, 2018, while Mother was driving the children home after leaving her employment at a "rap show," Mother reportedly fell asleep

_____

[1] In cases involving juvenile court proceedings, it is this Court's policy to remove the full names of children and other parties, to protect their identities.

and struck a tree. No other vehicles were involved in the collision. Mother's three children were transferred by ambulance to LeBonheur Children's Hospital. Azay (age seven months) and Monroe, Jr. ("Monroe") (age five years) suffered injuries that were non-critical. Tragically, however, Jaliya (age nine years) was pronounced dead at the hospital. A later autopsy indicated that Jaliya died as a result of multiple blunt force injuries, including skull fractures, brain hemorrhages, laceration of the scalp, and a cortical contusion of the brain.

The petition alleged that "Azay was in a car seat but it was not properly restrained in the vehicle. Per the referral, it is unknown if the other two children were properly restrained." Later, however, the petition stated that Monroe "told [DCS] that they were wearing seatbelts." Still, the petition noted that despite statements that the children were restrained, the children's "positions following the accident were not consistent with being properly restrained." In particular, Jaliya was found in the floorboard of the automobile "under some objects"; Monroe was found in the front of the vehicle and had head injuries from hitting the front windshield; Azay was found lying in the front seat of the automobile "not in h[is] car seat." So DCS concluded that the children were not properly restrained in the vehicle and that Mother should be charged with severe child abuse.

The petition further noted that "there was no indication of drug or alcohol use apparent at the accident scene," but that blood and alcohol tests were outstanding on Mother.[2] According to the petition, Mother was arrested on criminal charges relating to the collision and the children were taken into DCS custody.

On June 26, 2018, the juvenile court entered an ex parte custody order placing Azay in DCS custody and Monroe in the custody of his biological father. Mother was awarded supervised visitation with the children.

Eventually, the juvenile court entered an order on December 19, 2019, adjudicating the children dependent and neglected based on Mother's "stipulation to the facts in [DCS's] petition." The juvenile court's December 2019 order did not specifically mention DCS's severe abuse claim. On March 25, 2021,[3] a juvenile court magistrate entered a final order of disposition, maintaining the children in their current placements. Although the order again did not mention severe abuse, it stated that the order "is a final order and is intended to resolve all issues before the Court; any matters not specifically otherwise addressed are hereby denied." Mother asked for rehearing before the juvenile court judge and filed a notice of appeal to the Shelby County Circuit Court ("the trial court"). Mother eventually dismissed her request for rehearing.

_____

[2] The blood test later showed no positive findings.
[3] It appears that the juvenile court magistrate issued an oral ruling in July 2020, but inexplicably, the order was not filed for several months.

A hearing in the trial court was eventually held on June 17, 2022. Mother, DCS case manager Cherlando Hunt, the current DCS family service worker, and Monroe's father testified.[4] Ms. Hunt interviewed Mother and Monroe following the accident. During the interview, Mother told Ms. Hunt that the accident occurred after she left a nightclub and picked the children up from a babysitter. According to Mother's interview with Ms. Hunt, the accident occurred after Mother fell asleep at the wheel of the automobile. When asked what "the referral reported" that caused DCS to become involved in the case, Ms. Hunt replied as follows:

> According to the referral, all the children [were] in the back seat. It was also reported that Azay was in a car seat, but it was not properly secured. Monroe [] was found in the front seat. It appeared Monroe had his head on the wind -- on the windshield. Jayla was found unconscious on the floorboard on the back seat on the passenger side. There was no evidence of any use of alcohol or drugs in the car.

Ms. Hunt was also asked whether Monroe had given any statements concerning whether he was wearing a seatbelt. According to Ms. Hunt, when she first interviewed Monroe, he could not remember due to being "shaken up from the incident." In a later interview, however, he told Ms. Hunt that he was not wearing a seatbelt at the time of the collision:

> A.  Yes. He wasn't in a seatbelt.
> Q.  Was he able to inform you whether his siblings were in a seatbelt?
> A.  I think he stated that the baby was sitting in it, but he wasn't—Azay was sitting in the car seat, but he wasn't buckled down.

Records from Mother's mental health treatment that were admitted into evidence also stated that Mother "told the therapist her children were allegedly not strapped in [their] seatbelt properly." During a parenting assessment, the interviewer noted that Mother did not deny that her children were not properly restrained but explained that "the children must have taken off their seatbelts."

Mother explained that the accident occurred when she was driving the children home after picking them up from a babysitter after Mother's performance as a rapper. Mother testified that after she picked the children up, she waited at a gas station for her friend to be picked up, then began the journey home with the children. When Mother was asked during trial about where and how the children were seated, she testified that she could not remember, but also that the children were restrained:

---

[4] Much of the testimony concerned the dependency and neglect issue. Because that finding has not been appealed, we do not tax the length of this Opinion with a discussion of the evidence presented as to that issue.

Q. Where were they seated in the truck?
A. That part I can't exactly tell you. I don't remember.
Q. Okay. Can you tell me where Azay was sitting? Do you remember that?
A. No. I don't remember the seating of everybody.
Q. Do you know what type of seats they were in, whether they were buckled in or in a car seat?
A. Azay was in the car seat and the other children, yeah.
Q. Azay was in a car seat? Where were . . . the other children in any type of booster seat or just buckled in?
A. They were buckled in because of the size of the children for their size with their age didn't match. They weigh more for their ages.

When asked other questions about the accident, Mother testified that she could not remember. Mother was adamant, however, that the accident occurred because she fell asleep while driving.[5] Mother admitted that she pleaded guilty to criminally negligent homicide, but testified that she was placed on diversion, which she successfully completed.

The trial court entered a written order sustaining DCS's dependency and neglect petition and finding that the children were the victims of severe abuse due to Mother's lack of supervision that caused Jaliya's death and the other injuries to the children. Specifically, the trial court found as follows:

4. The Court notes that this is a tragic case.
5. The Court finds that while there were a lot of inconsistences in [Mother's] testimony regarding how the accident happened, there is no direct evidence that the accident was caused by the influence of any drugs or alcohol.
6. The Court finds in terms of the accident that [Mother] did not ensure that the children were secured in the vehicle and that this lack of supervision led to the death of one child and caused the other children to be injured.
7. This tragedy then led to [Mother] being charged with criminally negligent homicide to which she entered a plea and was placed on diversion. [Mother] successfully completed the diversion, and the charge is now eligible to be expunged from her record.

The trial court therefore concluded that children had been severely abused by Mother. As a result, the trial court maintained the current custody arrangements of the children, as well as Mother's supervised visitation. Mother now appeals to this Court.

---

[5] Mother admitted that she used marijuana during the time frame of the accident and thereafter for a time, but denied using cocaine, even though some drug screens may have indicated cocaine use.

## II. ISSUE PRESENTED

In this appeal, Mother presents a single issue: whether the trial court erred in finding that the children were victims of severe abuse due to Mother's lack of supervision.[6]

## III. STANDARD OF REVIEW

This Court has previously explained the standard of review applicable in an appeal from a dependency and neglect proceeding as follows:

> A parent's right to the care and custody of his or her child is among the oldest of the liberty interests protected by the due process clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L.Ed.2d 49 (2000); *Hawk v. Hawk*, 855 S.W.2d 573, 578–79 (Tenn. 1993); *Ray v. Ray*, 83 S.W.3d 726, 731 (Tenn. Ct. App. 2001). Although this right is fundamental, and superior to claims of the government and other persons, it is not absolute. *State v. C.H.K.*, 154 S.W.3d 586, 589 (Tenn. Ct. App. 2004). The right continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination, *Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002), such as when the child is found to be dependent and neglected, *see* Tenn. Code Ann. § 37-1-130(a), or when a parent is found to have engaged in severe child abuse, *see* Tenn. Code Ann. § 37-1-130(c).
>
> [T]he fact a parent has engaged in severe child abuse must be established by clear and convincing evidence. Tenn. Code Ann. § 37-1-129(c); *Tenn. Dep't of Children's Servs. v. M.S.*, No. M2003-01670-COA-R3-CV, 2005 WL 549141, at *10 (Tenn. Ct. App. Mar. 8, 2005) (holding that despite the lack of a statutory requirement that severe child abuse be shown by clear and convincing evidence, due to the consequences of such a finding the clear and convincing standard must be applied). For the evidence to be clear and convincing, the evidence must eliminate any serious or substantial doubt about the correctness of the conclusions to be drawn from the evidence. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). The evidence should produce a firm belief or conviction as to the truth of the allegations sought to be established. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007); *In re Giorgianna H.*, 205 S.W.3d 508, 516 (Tenn. Ct. App. 2006). In contrast to the preponderance of the evidence standard,

---

[6] Mother's brief admittedly states incorrect issues, which could arguably result in waiver. *See Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002) ("We consider an issue waived where it is argued in the brief but not designated as an issue."). Given the fundamental rights at stake, the otherwise clear notice that Mother was contesting the severe abuse finding, and DCS's undeterred ability to mount a defense to Mother's arguments, we decline to apply waiver in this particular case.

clear and convincing evidence should demonstrate that the truth of the facts asserted is "highly probable" as opposed to merely "more probable" than not. ***In re M.A.R.***, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005) (quoting ***In re C.W.W.***, 37 S.W.3d 467, 474 (Tenn. Ct. App. 2000)).

This court reviews the trial court's findings of fact *de novo* on the record accompanied by a presumption of correctness, "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); ***In re M.J.B.***, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). If some of the trial court's factual findings are based on its determinations of the credibility of the witnesses, this court will afford great weight to those credibility determinations, and will not reverse such determinations absent clear evidence to the contrary. *See* ***McCaleb v. Saturn Corp.***, 910 S.W.2d 412, 415 (Tenn. 1995).

Whether the ultimate issues of dependency and neglect or severe child abuse have been established by clear and convincing evidence are questions of law, which we review *de novo* with no presumption of correctness. *See* ***In re the Adoption of A.M.H.***, 215 S.W.3d 793, 810 (Tenn. 2007) (holding in a termination of parental rights case that "[a]s a question of law, the trial court's ruling that the facts of this case sufficiently support the termination ground of willful abandonment are reviewed *de novo* with no presumption of correctness."); *see also* ***In re Valentine***, 79 S.W.3d at 548 (holding that the question of substantial noncompliance with the requirements of a permanency plan was a question of law reviewed *de novo* with no presumption of correctness). To the extent the trial court made findings of fact in support of the ultimate issues, we review the factual findings pursuant to Tenn. R. App. P. 13(d), *de novo* with a presumption of correctness unless the evidence preponderates otherwise. ***In re A.T.P.***, No. M2006-02697-COA-R3-JV, 2008 WL 115538, at *4 (Tenn. Ct. App. Jan. 10, 2008) (holding that findings of fact in a dependency and neglect action for severe child abuse are "presumed to be correct unless the evidence preponderates against them"); *see also* ***In re the Adoption of A.M.H.***, 215 S.W.3d at 808–09; ***In re M.L.P.***, 228 S.W.3d at 143–44. However, the trial court's conclusions of law concerning the ultimate issues are reviewed *de novo* without a presumption of correctness. ***S. Constructors, Inc. v. Loudon County Bd. of Educ.***, 58 S.W.3d 706, 710 (Tenn. 2001); *see also* ***In re A.T.P.***, 2008 WL 115538, at *4. Therefore, this court will review the trial court's specific findings of fact in support of its ultimate conclusions *de novo,* pursuant to Tenn. R. App. P. 13(d), with a presumption of correctness; however, we will review those conclusions of law, that the parents engaged in severe child abuse and that the children are dependent and neglected, *de novo* with no presumption of correctness.

***In re H.L.F.***, 297 S.W.3d 223, 232–34 (Tenn. Ct. App. 2009).

# IV. ANALYSIS

In this appeal, Mother challenges the trial court's finding that the children were the victims of severe abuse. Under Tennessee Code Annotated section 37-1-129,

> If the petition alleged the child was dependent and neglected as defined in § 37-1-102(b)(13)(G), or if the court so finds regardless of the grounds alleged in the petition, the court shall determine whether the parents or either of them or another person who had custody of the child committed severe child abuse.

Tenn. Code Ann. § 37-1-129(b)(2). The statutory definition of severe child abuse applicable to dependency and neglect proceedings is found in Tennessee Code Annotated section 37-1-102(b)(27), which provides, in relevant part, as follows:

> "Severe child abuse" means:
>
> > (A)(i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death;
> >
> > > (ii) "Serious bodily injury" shall have the same meaning given in § 39-15-402(c) . . . .

In turn, "[s]erious bodily injury"

> includes, but is not limited to, second- or third-degree burns, a fracture of any bone, a concussion, subdural or subarachnoid bleeding, retinal hemorrhage, cerebral edema, brain contusion, injuries to the skin that involve severe bruising or the likelihood of permanent or protracted disfigurement, including those sustained by whipping children with objects and acts of female genital mutilation as defined in § 39-13-110.

Tenn. Code Ann. § 19-15-402(c).

A person's conduct is considered "knowing" under this definition not only when he or she has "actual knowledge of the relevant facts and circumstances[,]" but also "when he or she is either in deliberate ignorance of or in reckless disregard of the information that has been presented to him or her." *In re Markus E.*, 671 S.W.3d 437, 461 (Tenn. 2023) (quoting *In re S.J.*, 387 S.W.3d 576, 592 (Tenn. Ct. App. 2012)). For deliberate ignorance, the parent acts knowingly "'when they have specific reason to know' the relevant facts,

circumstances, or information 'but deliberately ignore them.'" *Id.* at 465 (citation omitted). For "reckless disregard," a parent's actions can be considered knowing "if the parent has been presented with the relevant facts, circumstances, or information and recklessly disregards them." *Id.*

In this case, the trial court focused on Mother's failure to properly restrain the children, causing catastrophic injuries, as the basis for the severe abuse finding. Mother's argument on appeal is two-fold. First, she asserts that there was insufficient evidence that the children were unrestrained. In particular, she asserts that the record lacks an "*official statement* by any person qualified to opine that the children were not buckled into seatbelts." Second, she asserts that her conduct was not knowing. Respectfully, we disagree.

Here, the trial court had before it sufficient evidence from which it could conclude that the children were not properly restrained at the time of the accident. In particular, Ms. Hunt testified that the children's positions following the accident were as follows: (1) Jaliya was found unconscious on the floorboard; (2) Monroe was found in the front seat having hit his head on the windshield; and (3) Azay was found in his car seat, but the seat was not properly secured.[7] Although Mother asserts on appeal that DCS failed to indicate where DCS learned this information, at trial Mother's counsel did not make an objection as to lack of foundation, lack of personal knowledge, hearsay, or any other objection indicating that the trial court could not consider this evidence for the truth of the matter asserted.[8] The failure to make a contemporaneous objection to this evidence at trial waives any argument that the trial court should not have considered it as proper evidence of the facts alleged. *See, e.g.*, **State v. Green**, No. 01C01-9303-CC-00084, 1994 WL 151332, at *3 (Tenn. Crim. App. Apr. 28, 1994) (holding that the defendant waived an objection for lack of foundation when she failed to make a contemporaneous objection). So then, the trial court had proof before it of the children's positions as a result of the accident.

Mother presents no authority that the trial court was not permitted to make a finding as to whether the children were restrained based on their positions following the accident, absent some official statement or expert proof. *See* **Sneed v. Bd. of Pro. Resp. of Sup. Ct.**, 301 S.W.3d 603, 615 (Tenn. 2010) (holding that an undeveloped, skeletal argument is waived). Certainly, she never asserted at trial that expert proof was required on this issue. *See* **In re Aliyah C.**, 604 S.W.3d 417, 419 (Tenn. Ct. App. 2019) (stating that "issues not raised at trial are generally considered waived on appeal"). Moreover, this Court has previously held that "[i]t is well-settled that expert proof is not required to prove severe abuse under Tennessee Code Annotated section 37-1-102(b)(27)(A)." **In re Lucas L.**, No.

---

[7] Mother did not offer any contrary proof concerning the children's positions following the accident.

[8] Mother is represented by different counsel in this appeal than the attorney who represented her in the trial court.

M2020-01614-COA-R3-JV, 2022 WL 2431709, at *5 (Tenn. Ct. App. July 5, 2022). Instead, even circumstantial evidence may be sufficient to meet the clear and convincing evidence standard applicable in cases involving the fundamental right to parent. *See In re M.O.*, 173 S.W.3d 13, 20 (Tenn. Ct. App. 2005) (noting that "circumstantial evidence may be more convincing than direct evidence"). "Circumstantial evidence is evidence of collateral facts and circumstances from which the trier-of-fact may infer that the main fact is based on reason and common experience." *State v. Phillips*, 138 S.W.3d 224, 231 (Tenn. Ct. App. 2003) (holding that a theory based on circumstantial evidence must be shown to be "more probable than the other parties' theories").

Given the proof of the children's positions, it was reasonable for the trial court to infer that the children were unrestrained in the automobile when the collision occurred. In other words, the fact that Jaliya was found on the floorboard, while Monroe was in the front seat having hit his head on the windshield, is sufficient proof that the children were more than likely not properly restrained. *See id.*; *see also In re H.L.F.*, 297 S.W.3d at 233 (holding that when a trial court makes factual findings in support of the ultimate legal issues, those findings are subject to the preponderance standard).

Additionally, the record also contains direct evidence that the children were not in seatbelts prior to the accident. *See State v. Robinson*, 146 S.W.3d 469, 522 (Tenn. 2004) (approving of a jury instruction stating, "Direct evidence is those parts of the testimony admitted in court which referred to what happened and was testified to by witnesses who saw or heard [or otherwise sensed] what happened first hand." (quoting T.P.I.—CRIM. 42.03(a) (4th ed.1995))). Specifically, Ms. Hunt testified that Monroe stated that Azay was buckled into a car seat, but that the car seat was not properly buckled into the automobile. Moreover, Monroe stated that he was not buckled in either.[9] It is true that Monroe's statement that he was not wearing a seatbelt is contradicted by the petition, which states that Monroe told Ms. Hunt at the time of the accident that he was wearing a seatbelt.[10] Ms. Hunt explained, however, that Monroe's statement about not wearing a seatbelt was made at a later interview while in the first interview, Monroe was "shaken up" and injured. And Monroe's later statement is corroborated by the evidence of the children's positions. *See Farber v. Nucsafe, Inc.*, No. E2022-00428-COA-R3-CV, 2023 WL 2519411, at *5 (Tenn. Ct. App. Mar. 15, 2023) (noting that while contradictory statements by the same witness cancel each other out, this rule does not apply when the inconsistency is explained or where there is corroboration of one version of the testimony). So then, the direct evidence presented also supports a finding that the children were not properly restrained at the time of the accident.

---

[9] No objection was made regarding hearsay or any other basis for disregarding this testimony.

[10] The petition and the testimony at trial were consistent that Azay was restrained in a car seat but the seat was not buckled into the automobile.

Of course, Mother claimed at trial that the children were buckled into the automobile. But as the trial court pointed out, Mother's testimony was not exactly persuasive on this fact. Indeed, Mother's memory of this fact was clear, while her memory of essentially every other aspect of the collision was murky. Moreover, when a trial court's finding rests on credibility, we are not permitted to overturn it absent clear and convincing evidence to the contrary. *See McCaleb*, 910 S.W.2d at 415. Here, Monroe's statements to Ms. Hunt, coupled with the proof presented concerning the children's positions following the accident, provide ample proof that the children were not properly restrained in the automobile at the time of the accident.

Having determined that there was sufficient proof that the children were unrestrained, Mother next asserts that DCS failed to prove the "knowing" element of severe abuse. DCS disagrees. Rather, DCS asserts that it presented clear and convincing evidence that, at a minimum, Mother was "presented with the relevant facts, circumstances, or information and recklessly disregard[ed] them." *In re Markus E.*, 671 S.W.3d at 465. We agree.

Tennessee law provides that "[a]ny person transporting any child . . . is responsible for the protection of the child" by ensuring that the child is properly restrained in accordance with the child's weight and age. Tenn. Code Ann. § 55-9-602. And a parent is responsible for a child's safety, even if he or she is not the driver. *See* Tenn. Code Ann. § 55-9-602(g)(5)(A) ("If the driver is neither a parent nor legal guardian of the child and the child's parent or legal guardian is present in the vehicle, the parent or legal guardian is responsible for ensuring compliance with this subsection (g)."). For a child under one year old, such as Azay, this means that the person must "properly us[e] a child passenger restraint system in a rear facing position[.]" Tenn. Code Ann. § 55-9-602(a)(1). Older children may be required to be restrained by "properly using a belt positioning booster seat system," depending on the child's weight. Tenn. Code Ann. § 55-9-602(a)(3). And any child under the age of twelve must be protected by "properly using a seat belt system[.]" Tenn. Code Ann. § 55-9-602(g)(1)(A). Thus, Tennessee law places a clear duty on a person driving a vehicle to ensure that a child is protected by utilizing proper safety restraints.

Mother admitted to knowing about the child safety laws because she claimed at trial that Monroe and Jaliya weighed too much to be required to use booster seats. *See also In re Keri C.*, 384 S.W.3d 731, 746 (Tenn. Ct. App. 2010) (holding, in the context of the duty to visit and support that "persons are presumed to know the law, and a parent should know that she has such responsibilities for her child"). But regardless of Monroe's and Jaliya's weights, their ages required that they at least be restrained with a seat belt. And Azay's age required that he be "properly" restrained in a car seat. Tenn. Code Ann. § 55-9-602(a)(1). As discussed above, however, the evidence supports a finding that the older children were not wearing seat belts at the time of the accident and that Azay's car seat was not properly secured. So then, Mother, as the driver of the automobile and the parent of the children, had a known duty to ensure that her children were protected by age-appropriate safety

- 10 -

restraints. In failing to ensure that the children were properly restrained, Mother recklessly disregarded that duty.[11] As a result, the children suffered injuries ranging from mild to catastrophic.

In sum, the proof does not preponderate against the trial court's finding that the children were unrestrained in the automobile at the time of the accident. Clear and convincing evidence also supports the trial court's finding that Mother recklessly disregarded a known duty in failing to ensure that her children were restrained, as required by Tennessee law. Thus, Mother knowingly exposed the children to neglect that not only had the likelihood of causing serious injury or death, but in fact did result in the death of one of her children. As a result, the trial court did not err in concluding that Mother was guilty of severe child abuse under Tennessee Code Annotated sections 37-1-129(b)(2) and 37-1-102(b)(27).

### V. CONCLUSION

The judgment of the Shelby County Circuit Court is affirmed, and this cause is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are assessed to Appellant, Racqual C., for which execution may issue, if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

---

[11] During a parenting assessment, Mother claimed that the children may have unbuckled themselves on the night of the accident. Mother did not repeat this claim at trial or on appeal. Regardless, it defies logic and common sense to suggest that Azay, who was less than a year old, unbuckled his car seat from the seat of the automobile on his own.